# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANNA R. CONLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-237-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Shanna R. Conlee requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 23, 1969, and was forty-one years old at the time of the administrative hearing. She has an eleventh grade education and past relevant work as a phlebotomist, nurse's aide, cashier, and psychiatric technician (Tr. 23, 30). The claimant alleges that she has been unable to work since September 1, 2007, because of heart problems, back problems, and mental problems (Tr. 136).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 30, 2009. The Commissioner denied her applications. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 13, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a narrowed range of unskilled sedentary work, *i. e.*, that claimant was able to lift/carry five pounds frequently and 10 pounds occasionally, stand/walk for two hours in an eight-hour work day, and sit

for six hours in an eight-hour workday (Tr. 16). The ALJ also found that the claimant had the following limitations: i) only occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling; ii) never climbing ladders; iii) claimant must avoid heights or dangerous moving machinery; and iv) understanding, remembering, and carrying out only simple tasks (Tr. 16). While the ALJ concluded that the claimant was unable to return to her past relevant work, he also found that there was other work the claimant could perform in the national economy, *i. e.*, clerical positions (charge accounting clerk) and assembly positions (rotor assembler) (Tr. 24). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 24).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the treating physician opinion of Dr. Jerald Gilbert; ii) by improperly considering the claimant's substance abuse; iii) by failing to properly consider claimant's obesity in accordance with Social Security Ruling 02-1p; and iv) by failing to properly analyze the claimant's credibility. The undersigned Magistrate Judge agrees with the claimant's first contention.

The claimant received most of her medical treatment from Dr. Jerald M. Gilbert of the Carl Albert Indian Family Practice Clinic. The claimant complained of low back pain radiating to the left leg on numerous occasions, and MRI results on August 21, 2008 revealed that claimant had severe disc space narrowing at L5-S1, mild disc space narrowing at L4-5, a small lipoma in the L3 vertebral body, and very mild degenerative

endplate changes at L5-S1 (Tr. 199). The claimant also frequently complained of generalized muscle pain (Tr. 326-27, 642, 917, 932-33, 938, 1034) and it was noted that claimant had elevated levels of creatine phosphokinase (CPK) in her system on numerous occasions (Tr. 250, 271, 326, 382, 400, 403, 915, 917, 930, 932-33, 938-39, 944, 1034). Because of the generalized muscle pain, elevated CPK levels, and a positive family history, the claimant was suspected to have muscular dystrophy (Tr. 260, 264, 380) and Dr. Gilbert referred the claimant to a neurologist, Dr. Brent A. Beson, M.D. Dr. Beson examined the claimant on at least two occasions. The first examination occurred on July 30, 2008 (Tr. 344-47). Dr. Beson noted that claimant reported diffuse muscular aches and pains, with "a new pain in the last two weeks with a shooting electric-like sensation from her hip area all the way down wrapping around to the foot" (Tr. 344). Dr. Beson also noted claimant's complaints about left side weakness and generalized weakness in the arms and legs upon lifting things above her head and getting up out of a chair (Tr. 344). Upon examination, Dr. Beson found very mild weakness of the left iliopsoas and borderline subtle decrease in sensation in the left foot (Tr. 345). However, Dr. Beson also found that claimant's complaints of diffuse muscle aches, cramps, and weakness were not related to muscular dystrophy (Tr. 346). In a March 10, 2009 letter, Dr. Beson, M.D., confirmed that claimant did not have any evidence of muscular dystrophy and instead had chronic L5 and S1 radiculopathy on the left side, history of alcohol abuse, and history of hepatitis and pancreatitis (Tr. 343). Dr. Beson noted the MRI

abnormalities but did not recommend surgery because of a lack of focal weakness or increase in pain (Tr. 343).

In treatment notes from both Dr. Gilbert and the Chickasaw Nation Family Practice Center, there are also many notations related to the claimant's complaints of anxiety and depression (Tr. 331, 333, 336-37, 339, 844, 851, 872, 926, 929, 931, 937-38). In 2009, the claimant's depression was noted to be major, recurrent, and severe (Tr. 929, 931, 938). On June 17, 2009, the claimant complained of short-term memory loss and confusion and by May 21, 2010, the claimant was noted to have "severe short-term memory loss" at which time Dr. Gilbert recommended that claimant live with her mother because of her memory problems (Tr. 915).

The claimant was examined by state physician Dr. Beth Jeffries, Ph.D. on June 16, 2009 (Tr. 514-17). The claimant reported that she used to have a "'bad drinking problem'" and was fired from her job as a substance abuse technician for "giving out medications" (Tr. 514). The claimant also reported having been arrested "between 20 and 30 times, all . . . alcohol related" but that she had been sober since October 1, 2008 (Tr. 514). The claimant stated that she had no friends and that her mother manages her money on her behalf (Tr. 515). The claimant also stated that she hears mumbling which "sounds like a crowd in the background" (Tr. 551). Dr. Jeffries concluded that claimant's psychological symptoms were likely improving due to her continued sobriety from alcohol, she had no other "significant psychological problems that would impede her

ability to perform in most social, academic or occupational settings[,]" and she would be unable to manage any awarded benefits on her own behalf (Tr. 516).

The claimant's treating physician, Dr. Jerald Gilbert, submitted a letter dated July 12, 2010 which stated:

> Ms. Conlee is a 41 year old Indian female, who has been a patient of mine for several years. In the last year and a half, she has been diagnosed with Dementia, has had elevated CPK/myalgia with unknown etiology, and has Bipolar Disorder. It is my opinion that she is unable to work meaningful employment due to her mental confusion.

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency

between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

With regard to Dr. Gilbert's opinion, the ALJ rightly points out that his opinion that claimant is "unable to work" is a determination that is wholly within the province of the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that the claimant is "disabled" or "unable to work" are not medical opinions). As such, the ALJ is not required to attribute any special significance to that opinion. *See* Soc. Sec. R. 96-5p. However, the ALJ also dismissed Dr. Gilbert's opinion that the claimant had dementia and mental confusion for the following reasons: i) that his dementia diagnosis was based in part on reports from the claimant and the claimant's mother; ii) reports of severe mental confusion at night could have been due to the claimant's Ambien prescription; and iii) claimant's mental confusion "might be related to her continued alcohol abuse" (Tr. 21). Further, the ALJ dismissed Dr. Gilbert's note that claimant had elevated CPK

levels and myalgia of unknown etiology and instead attributed the claimant's elevated CPK levels to her Simvastatin medication (Tr. 21-22).

"[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). In this case, the ALJ made numerous improper speculations about Dr. Gilbert's opinion, *i. e.*, that the bases of his diagnosis of claimant's dementia were reports from the claimant's mother, that Ambien and/or continued alcohol abuse was the cause of claimant's mental confusion, and that Simvastatin was causing the claimant to have elevated CPK levels when Dr. Gilbert specifically noted that the elevated CPK/myalgia was of an unknown etiology (Tr. 1032). "While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]") *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) [citations omitted]. If the ALJ had questions regarding the bases for Dr. Gilbert's opinions and diagnoses, then the ALJ should have taken actions to resolve any inconsistencies, *i. e.*, request additional existing records or recontact Dr. Gilbert. 20 C.F.R. §§ 404.1520b(c); 416.920b(c).

Because the ALJ failed to properly analyze the treating source opinion of Dr. Jerald Gilbert as outlined above, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence or record. If the ALJ's subsequent analysis

results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma